827 So.2d 261 (2002)
TERRY L. BRAUN, P.A., d/b/a Ocala Dental Care, Appellant/Cross-Appellee,
v.
Jan CAMPBELL, and Robert Dailey, etc., et al., Appellees/Cross-Appellants.
No. 5D01-3246.
District Court of Appeal of Florida, Fifth District.
July 26, 2002.
Rehearing Denied October 8, 2002.
*264 Kathleen S. Cumming and David R. Kuhn, of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellant/Cross-Appellees.
Paul S. Rothstein, Gainesville, and N. Albert Bacharach, Jr., Gainesville, for Appellees/Cross-Appellants.
SHARP, W., J.
Terry Braun, P.A., doing business as Ocala Dental Care, appeals from a nonfinal order which certified a portion of the appellees' complaint which dealt with breach of an implied contract (Count VIII), negligence (Count XIII) and battery (Count XVII) as a class action lawsuit with findings, pursuant to Florida Rule of Civil Procedure 1.220. Appellees Jan Campbell and Robert Dailey cross-appeal from a portion of the same order which denied certification for two counts: Count I, which alleged deceptive and unfair trade practices, and Count V, which alleged breach of an express contract. We reverse the certification and affirm the cross-appeal.
This is the second time this matter has come to this court. In Braun v. Campbell, 781 So.2d 480 (Fla. 5th DCA 2001), we remanded this cause to the trial court for the purpose of making factual and legal findings required by Florida Rule of Civil Procedure 1.220(d)(1). The facts posed by this case are set forth in that opinion and we do not repeat them here.
After remand, the trial court made the following findings:
Defendant Terry L. Braun, P.A. does business as Ocala Dental Care, a dental office located in Marion County, Florida. Plaintiffs, with the exception of Plaintiff Pascucci,1 were all individuals who were treated at Ocala Dental Care by Defendant Illya Fitzgerald Hawthorn. It is undisputed that Defendant Hawthorn did not possess a license to practice dentistry from the State of Florida when he provided dental services to the Plaintiffs.
The Court finds that as to Count VIII, Implied Contract, Count XIII, Negligence, and Count XVII, battery, the Plaintiffs have met the criteria of Florida Rule of Civil Procedure 1.220 for Class Certification. The Court finds that there were between 25 and 31 individuals treated by Hawthorn at Ocala Dental Care. The members of the class are so numerous that separate joinder of each member is impracticable; and that the size of the class clearly satisfies the numerosity requirement of Rule 1.220(a)(1). Classes with as few as 25 members have satisfied the numerosity requirements. See, e.g., Estate of Bobinger v. Deltona Corporation, 563 So.2d 739 (Fla.2d D.C.A.1990).
The Court finds that the representatives' claims of implied contract, negligence and battery raise issues of law or fact common to the entire class; that common and typical questions clearly predominate over individual issues, and therefore, commonality under Florida Rule of Civil Procedure 1.220(a)(2) is satisfied. The Court finds that representatives' claims for implied contract, *265 negligence and battery arise out of a common nexus of operative facts and are typical of the claims of the class. Therefore, typicality under Florida Rule of Civil Procedure 1.220(a)(3) is satisfied. The Court also finds that the class representatives can fairly and adequately protect and represent the interests of each member of the class.
The claims of the class are not maintainable under Florida Rule of Civil Procedure 1.220(b)(1) or 1.220(b)(2). The claims for implied contract, negligence and battery, although not maintainable under either subdivision (b)(1) or (b)(2), have questions of law or fact common to the claims of the representative parties and the claims of each member of the class which predominate over any question of law or fact affecting only individual members of the class. Furthermore, class representation is superior to other available methods for the fair and efficient adjudication of this controversy.
The Court's conclusions are derived from consideration of all relevant facts and circumstances, including: (A) the respective interests of each member of the class in claims or defenses; (B) the nature and extent of the pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated; (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted; and, (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.
The Court finds that as to Plaintiffs' request for class certification pertaining to Count I, Deceptive and Unfair Trade Practices, individual questions predominate over any common questions, thus making any class action trial unmanageable. See Executec [Execu-Tech] Business Systems v. Appleton Papers, 743 So.2d 19 (Fla. 4th DCA 1999).
The Court finds that as to Count V, Express Contract, individual questions predominate over any common questions, thus making any class action trial unmanageable. See K.D. Lewis Enterprises Corporation v. Smith, 445 So.2d 1032 (Fla. 5th DCA 1984), Mathiason [Mathieson] v. General Motors Corporation, 529 So.2d 761 (Fla. 3d DCA 1988).
1. Pascucci brings a loss of consortium claim as the husband of Plaintiff Hunt.
Parties seeking class certification have the burden of pleading and proving each and every element required by rule 1.220.[1] A class action may be certified only after the trial court determines on the basis of a "rigorous analysis," that the elements of the class action rule have been satisfied.[2] The decision to certify a class should be made carefully on the basis of sufficient information, because the granting of class certification considerably expands the dimensions of the lawsuit and commits the court and the parties to much *266 additional labor, over and above that entailed in an ordinary private lawsuit.[3]
Rule 1.220 states four threshold requirements applicable to all class actions:
(a) Prerequisites to Class Representation. Before any claim or defense may be maintained on behalf of a class by one party or more suing or being sued as the representative of all the members of a class, the court shall first conclude that (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.
They are commonly referred to as numerosity, commonality, typicality and adequacy. Samples v. Hernando Taxpayers Ass'n, 682 So.2d 184 (Fla. 5th DCA 1996); Cheatwood v. Barry University, Inc., 2002 WL 4629, No. C1001-3986 (Fla.Cir.Ct. Jan. 1, 2002). See also Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).[4]

1. Numerosity.
Parties seeking class certification must demonstrate that the members of the class are so numerous that separate joinder of each member is impracticable. In this case, the trial judge found that 25 to 31 individuals were treated by Hawthorn (appellant's employee who was not licensed to practice dentistry) while at Ocala Dental Care. Noting that as few as 25 members of a class have satisfied this requirement, the judge concluded the numbers in this case were sufficient. See Fox v. Prudent Resources Trust, 69 F.R.D. 74 (E.D.Pa.1975). It appears that 25 members of a class does not automatically satisfy the numerosity requirement, however. One authority has stated a class should exceed fifty members to qualify. Henry P. Trawick, Jr., Florida Practice & Procedure § 4-8 (2000 ed). Trawick maintains the general test of impracticability is whether the names and number of members of the class will be unstable.
In deciding this issue for cases like this one which fall into the "gray area," courts must consider additional factors other than class size. They include: 1) judicial economy arising from avoiding multiple actions; 2) the geographic dispersion of members of the proposed class; 3) the financial resources of those members; 4) the ability of the members to file individual suits, and 5) requests for prospective relief that may have an effect on future class members. Ansari v. New York University, 179 F.R.D. 112 (S.D.N.Y.1998).
In this case, appellees presented no evidence relating to the factors concerning the practicability of joinder. Nor does the trial judge's order state facts to support his conclusion that members of the class are so numerous that separate joinder is impracticable. In this case it appears persons treated by the unlicensed dentist had been identified. They resided in and about the same area and were treated *267 within a relatively short period of time (months). There was no evidence that joinder of all the members could not be accomplished. Individual lawsuits may, if appropriate, be consolidated under Florida Rule of Civil Procedure 1.270. See Lance v. Wade, 457 So.2d 1008 (Fla.1984).

2. Commonality
The primary concern in determining commonality is whether the representative members' claims arise from the same course of conduct that gave rise to the other claims, and whether the claims are based on the same legal theory. McFadden v. Staley, 687 So.2d 357 (Fla. 4th DCA 1997). See also Cheatwood. Where both liability and damages depend on individual factual determinations, resolution of these claims can only be decided on an individual basis which is inconsistent with the commonality requirement for class actions. Cheatwood.
In this case, the causes of action for which class certification was given were for implied contract, negligence and battery. The appellees alleged that Braun held Hawthorn out to be a licensed dentist at his dental office, that Braun was negligent in checking Hawthorn's qualifications, that he knew or should have known Hawthorn was unlicensed, and that Braun failed to obtain their informed consent for treatment. They also alleged they paid for licensed dental services but did not receive them. These allegations raise issues of law and fact which seem common to all potential class members.[5]

3. Typicality
Rule 1.220(a)(3) requires that the class representative's claims be typical of the claim of each member of the class. Merely pointing to common issues of law is insufficient to meet the typicality requirement when the facts required to prove the claims are markedly different between class members. Cheatwood.
In this case, the class representatives are Campbell, Dailey, Hunt and Pascucci. Campbell saw Hawthorn in January 1997, complaining of pain in her teeth. Hawthorn examined her, took x-rays and prescribed medication. She did not return and has not sought more dental care. Dailey saw Hawthorn in 1996; Hawthorn extracted three of his molars. Hunt saw Hawthorn in October 1996. Hawthorn examined *268 her and extracted eleven of her teeth. In that process, Hawthorn ruptured Hunt's sinus pocket, causing severe damage. Pascucci is Hunt's husband and his claim is for loss of consortium.
Campbell was the only patient/class member, who testified at the hearing. Her experience with Hawthorn appears to be very different than Hunt's. Other class members may have had different problems and experiences with Hawthorn. They were charged different sums for services rendered. Some may have been satisfied with the care provided by Hawthorn. Some apparently demanded a refund of payments made to Braun at his clinic, after reading about the matter in a local newspaper, or hearing about it on television, but may have suffered no harm.
We conclude appellees failed to provide sufficient information to satisfy the typicality requirement. See KPMG Peat Marwick, LLP v. Barner, 799 So.2d 308 (Fla. 2d DCA 2001) (purchasers of corporate stock did not establish qualification for class certification of their action against accounting firm when they failed to present evidence establishing numerosity, commonality, typicality or adequacy). Compare W.S. Badcock Corp. (in class action against company for charging financing fee, plaintiffs' claims were identical to the claims of the other members of the class as all were required to pay the same fee).

4. Adequacy
Rule 1.220(a)(4) requires that the class representatives demonstrate they can fairly and adequately protect and represent the interests of each member of the class. This inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. Amchem Products, Inc., 117 S.Ct. at 2250-2251.
In this case, Hunt may have been severely injured by Hawthorn and may be interested in a substantial recovery from Braun. In contrast, Campbell's damages may be minimal. Further, she, as well as others, may have been reimbursed for their dental charges. Thus they may be interested in a quick settlement for a smaller amount than would adequately compensate Hunt and other potential class members. Based on this record, it appears appellees have failed to establish that the class representatives will adequately represent the class. Amchem Products, Inc., 117 S.Ct. at 2250. A class representative must be part of the class and possess the same interest and suffer the same injury as class members. Amchem Products, Inc., 117 S.Ct. at 2250-2251.
In addition to meeting the requirements of rule 1.220(a), appellees must demonstrate the class action is maintainable under rule 1.220(b)(1), (2) or (3). Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. 4th DCA 1999); Estate of Bobinger v. Deltona Corp., 563 So.2d 739 (Fla. 2d DCA 1990); Cheatwood. The trial judge found that the class action was not maintainable under 1.220(b)(1) or (b)(2) but was maintainable under (b)(3). This section provides:
(b) Claims and Defenses Maintainable. A claim or defense may be maintained on behalf of a class if the court concludes that the prerequisites of subdivision (a) are satisfied, and that:
(3) the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and *269 class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions shall be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.
To qualify for certification under 1.220(b)(3), a class must meet two requirements: 1) the common questions must predominate over any questions affecting only individual members, and 2) the class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. Amchem Products, Inc.; Cheatwood. The rule provides a non-exhaustive list of factors pertinent to the predominance and superiority requirements. Amchem Products, Inc.
Based on this analysis, we conclude appellees do not appear to have established that class representation is superior to other methods for adjudicating this controversy. The number of patients treated by Hawthorn appears relatively small, over a relatively short time period. Their experiences appear to have varied dramatically from ones severely injured to others who were satisfied with their treatment. The ones severely injured would seem to have a significant interest in individually controlling the prosecution of their cases. Further, some claims of negligence may require a mini-trial as to each patient.
With regard to the cross-appeal, we agree with the trial court that class certification was properly denied for the same reasons stated above.
AFFIRMED in part; REVERSED in part; REMANDED.
PALMER and ORFINGER, R.B., JJ., concur.
NOTES
[1] Bouchard Transportation Co., Inc. v. Updegraff, 807 So.2d 768 (Fla. 2d DCA 2002); Stone v. Compuserve Interactive Services, Inc., 804 So.2d 383 (Fla. 4th DCA 2001); Courtesy Auto Group, Inc. v. Garcia, 778 So.2d 1000 (Fla. 5th DCA 2000); Execu-Tech Business Systems, Inc. v. Appleton Papers, Inc., 743 So.2d 19 (Fla. 4th DCA 1999), rev. denied, 763 So.2d 1042 (Fla.2000).
[2] Bouchard Transportation Co., Inc.; Stone; Courtesy Auto Group, Inc.; Execu-Tech Business Systems, Inc.; Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. 4th DCA 1999); W.S. Badcock Corp. v. Myers, 696 So.2d 776 (Fla. 1st DCA 1996); McFadden v. Staley, 687 So.2d 357 (Fla. 4th DCA 1997); Samples v. Hernando Taxpayers Ass'n., 682 So.2d 184 (Fla. 5th DCA 1996).
[3] Ramon v. Aries Insurance Co., 769 So.2d 1053 (Fla. 3d DCA 2000), rev. denied, 790 So.2d 1107 (Fla.2001); Baptist Hospital of Miami, Inc. v. Demario, 661 So.2d 319 (Fla. 3d DCA 1995).
[4] Rule 1.220 is based on Federal Rule of Civil Procedure 23 and thus Florida courts may look to federal cases as persuasive authority. Cheatwood.
[5] See Davis v. Powertel, 776 So.2d 971 (Fla. 1st DCA 2000), rev. denied, 794 So.2d 605 (Fla.2001) (claims against telephone company for providing cellular telephone without informing subscribers that telephones had been programed only to work with company's service could be asserted as a class action since all claims shared one essential common feature; that is, the allegedly deceptive practice reduced the value of the telephones); W.S. Badcock Corp. v. Myers, 696 So.2d 776 (Fla. 1st DCA 1996) (complaint against company for deceptive practice of charging a financing fee satisfied commonality requirement; subject of the action is the fee company charged purchasers to finance goods, members of the class had a similar interest in curtailing deceptive activity and all had a common right of recovery based on the same financing terms); McFadden v. Staley, 687 So.2d 357 (Fla. 4th DCA 1997) (claims asserted by customers who allegedly became ill from eating adulterated food at restaurant over a four-day period were suited for class action; claims which arise out of the same course of conduct by a defendant even in differing factual contexts may be pled as a class action if they present a question of common interest); Broin v. Philip Morris Companies, Inc., 641 So.2d 888 (Fla. 3d DCA 1994), rev. denied, 654 So.2d 919 (Fla.1995)(action against tobacco manufacturers filed by nonsmoking flight attendants met commonality requirements; alleged facts demonstrate that members of the class behaved in the same way, they were passive inhalers of second-hand smoke and the defendants acted towards each member in a similar manner by manufacturing the cigarettes that exuded the smoke).